# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JOSÉ MANUEL ZAVALA-MARTÍ,

    **Petitioner,**

       **v.**

UNITED STATES OF AMERICA,

    **Respondent.**

**Civil No.** 16-2762 (FAB)

related to

**Criminal No.** 07-318 (FAB)

## OPINION AND ORDER

**BESOSA, District Judge.**

Before the Court is José Manuel Zavala-Martí's ("Petitioner" or "Zavala-Martí") motion to vacate, set aside, or correct his sentence in Criminal Case No. 07-318 pursuant to Title 28, United States Code, § 2255 ("section 2255"), (Civil Docket No. 1); Memorandum of Law, (Civil Docket No. 1-1); Petitioner's Motion Supplementing 2255 Petition Facts, (Civil Docket No. 7); Petitioner's Motion Providing Additional Evidence (Civil Docket No. 9); the Government's Response (Civil Docket No. 16) and Petitioner's Reply (Civil Docket No. 19.) For the reasons set forth below, the Court dismisses with prejudice petitioner's motion to vacate his sentence (Civil Docket No. 1) and its supporting memorandum of law (Civil Docket No. 1-1) as well as all subsequent motions.

## I.    BACKGROUND

On February 5, 2008, Zavala-Martí was charged, along with 46 additional defendants, in a ten-count Superseding Indictment involving drugs, firearms, bribery, and witness tampering offenses in Criminal Case No. 07-318, (Criminal Docket No. 478.)

On October 13, 2009, the criminal case was called for jury trial as to Zavala-Martí and five (5) additional defendants, (Criminal Docket No. 1560.)  After the jury was empaneled and once the first full day of trial was completed, petitioner informed the Court that he wished to plead guilty by way of a straight plea, meaning there was no agreement with the government to plead guilty[1].  On that same day, Zavala-Martí pled guilty of violating Title 21, United States Code, §§ 846 and 860 (count one of the Superseding Indictment), Title 18, United States Code, § 924(c)(11) and (o) (count two of the Superseding Indictment); Title 21, United States Code, §§ 841 and 860 and Title 18, United States Code, § 2, (counts three, four, five and six of the Superseding Indictment); Title 18, United States Code, §§ 1512(b)(1), (k) and 2, (counts seven and eight of the Superseding Indictment); Title 21, United States Code, § 201(b)(3) and Title 18, United States Code, § 2, (count nine of the Superseding

---

[1] Even after the trial began, the United States offered Zavala-Martí the opportunity to plead guilty to 17 years of incarceration.  The offer was communicated to Zavala-Martí and he rejected it, (Civil Docket No. 7-1 at p. 1.)

Indictment); and the forfeiture allegation, (Criminal Docket Nos.
478 and 1582.)

Zavala-Martí's sentence was held on January 28, 2011
(Criminal Docket No. 2575.)  Petitioner was sentenced to a term of
life imprisonment, (Criminal Docket No. 2579.)  Zavala-Martí filed
a timely Notice of Appeal (Criminal Docket No. 2596.)

The First Circuit Court of Appeals, in <u>United States v.
Zavala-Martí</u>, 715 F.3d 44 (1st Cir. 2013), vacated petitioner's
life sentence and remanded the case for resentencing before a
different judge.  The First Circuit Court of Appeals concluded
that the life term imprisonment was unsupported by any count of
the Superseding Indictment, 715 F.3d at 51-52, 54.

On October 16, 2013, Zavala-Martí's resentencing hearing was
held before a different judge, as the Court of Appeals had ordered
(Criminal Docket No. 3192.)  After a lengthy allocution and
argument by defense counsel the Court made the following sentencing
determinations:

Counts One through Six were grouped together pursuant to
U.S.S.G. § 3D1.2(d);

Counts Seven, Eight, and Nine were grouped with Counts
One through Six pursuant to U.S.S.G. 3D1.1(c);

A base offense level of 34 was determined pursuant to
U.S.S.G. § 2D1.1(c)(3) due to the determination of drug
quantity amount of 22 kilograms of cocaine;

A two-level enhancement was imposed for protected location;

An additional two-level enhancement was imposed for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b);

An additional four level enhancement was imposed for petitioner's leadership role pursuant to U.S.S.G. § 3B1.1(a);

An additional two-level enhancement was imposed for obstruction of justice pursuant to U.S.S.G. § 3C1.1;

A two-level downward reduction was imposed for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, (Criminal Docket No. 3202 at pgs. 69-71.)

The Court determined that because petitioner's Criminal History Category was I and his total offense level was 42, his sentencing guideline range was 30 years to life imprisonment, Id. 71.

Following that determination the court imposed the following sentence: a term of imprisonment of 35 years as to Count One, a term of imprisonment of 20 years as to Count Two; a term of imprisonment of 35 years as to Count Three; a term of imprisonment of 35 years as to Count Four; a term of imprisonment of 35 years as to Count Five and a term of imprisonment of 10 years as to Count Six all to be severed concurrently with each other. In addition, petitioner was sentenced to a term of imprisonment of 10 years as to Count Seven; a term of imprisonment of 10 years as to Count Eight and a term of imprisonment of 15 years as to Count Nine,

these three to be served concurrently with each other but consecutively to the terms of imprisonment imposed in Counts One through Six.  The total term of imprisonment for Zavala-Martí was a term of imprisonment of 50 years, (Criminal Docket No. 3192.)

Once again, Zavala-Martí appealed his sentence, (Criminal Docket No. 3197.)  The First Circuit Court of Appeals affirmed petitioner's sentence, United States v. Zavala-Martí, 601 Fed. Appx. 6 (1st Cir. 2015).  Zavala-Martí then filed a petition for certiorari which was denied by the Supreme Court, Zavala-Martí v. United States, 136 S.Ct. 148 (2015).  Finally, on October 4, 2016, Zavala-Martí, through retained counsel, filed a timely 2255 Petition for *habeas corpus* relief (Civil Docket No. 1.) Petitioner, through counsel, has made subsequent additional filings in an attempt to substantiate his claim, all of which have been reviewed and analyzed by the Court.

## II.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by [an] Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "[T]he statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked

jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)). Claims that do not allege constitutional or jurisdictional errors are properly brought under section 2255 only if the claimed error is a "fundamental defect which fundamentally results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Id.

A motion filed pursuant to section 2255 is not a substitute for a direct appeal. Foster v. Chatman, 136 S. Ct. 1737, 1758 (2016). "[A]s a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal." Id. (citations omitted.) Moreover, "[c]ollateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by failing to raise the claim in a timely manner at trial or on direct appeal." Bucci v. United States, 662 F.3d 18, 27 (1st Cir. 2011) (quotation marks and citations omitted.) If a § 2255 petitioner does not raise a claim on direct appeal, that claim is barred from judicial review unless the petitioner can demonstrate both (1) cause for the procedural default, and (2) actual prejudice

resulting from the error asserted.  Id.; United States v. Frady, 456 U.S. 152, 167-68 (1982).

## III. DISCUSSION

Zavala-Martí requests that he be allowed to withdraw his guilty plea due to the following:

> The straight plea to which Zavala-Martí entered after the commencement of trial was not knowing and voluntary due to Brady violations and destruction of evidence by the government;

> Zavala-Martí's appellate counsel's assistance was ineffective on direct appeal because he failed to raise that the district court had engaged in impermissible double counting when it imposed a sentence for counts 7-9 consecutively to the sentence imposed for counts 1-6, because the grouped count computation of all counts made by the probation officer had already included a two-level upward adjustment for obstruction of justice. Appellate counsel failed to raise that the district court committed procedural sentencing error when it failed to compute the applicable guideline sentence for counts 7-9 prior to imposing the maximum statutory sentence in those counts of 10 and 15 years consecutively to the 35 years imposed in counts 1-6 without justifying the variance or departure.

**A.  Petitioner Zavala-Martí's first claim:  The straight plea to which Zavala-Martí entered after the commencement of trial was not knowingly and voluntarily made due to Brady violations and destruction of evidence by the government.**

Zavala-Martí argues that because the government committed prosecutorial misconduct when it failed to provide impeachment evidence regarding three cooperating witnesses, his

straight plea was not knowingly and voluntarily made.[2]  Zavala-Martí at no time makes a claim of actual innocence; quite the contrary, his argument is that if he had known of the impeachment evidence that could have been used against certain government cooperating witnesses, he would have taken his chances at trial. Zavala-Martí further argues that he was not aware of the impeachment information or its usefulness until he read the First Circuit Court of Appeals' opinion in United States v. Flores-Rivera, et al., 787 F.3d 1 (1st Cir. 2015), (Civil Docket No. 1 at p. 8.)  Petitioner contends that because he pled guilty at the beginning of the trial, he was unaware of the restricted motions filed concerning alleged Brady violations, all of which were denied by the Court, as well as the post-trial evidentiary hearing on the matter, Id.  Because of this delay in knowledge, Zavala-Martí asserts that his only viable recourse is filing his 2255 petition for relief.

Zavala-Martí's claim cannot prevail for several reasons. First, the alleged impeachment evidence in question was available to petitioner's trial counsel as part of discovery.  After Zavala-Martí had pled guilty, his then trial counsel, Attorney María

---

[2] Zavala-Martí entered into his straight plea after the jury was empaneled after a two-day jury selection process, and after the first day of trial had completed. After petitioner pled guilty, the trial continued with the remaining defendants. (Criminal Docket No. 1647.)

Sandoval, received e-mail communications in March 2010 and June 16, 2010, from the government indicating the availability of the Giglio material at the United States Attorney's Office (Civil Docket No. 7-1 at p. 5.) Once Ms. Sandoval came into possession of the material in 2010, she visited petitioner on several occasions at the prison to discuss the information with him, (Id. at p. 5-6.) Ms. Sandoval informed petitioner that the contents of the documents confirmed what the trial attorneys and some defendants suspected before trial, that cooperating witness Harry Smith Delgado-Cañuelas ("Delgado") was communicating with other cooperating witness, Xiomara Berríos and Andy Marcano, (Id., at p. 6.)

Ms. Sandoval informed Zavala-Martí that the documents would have been valuable at trial because cross-examination of three of the cooperating witnesses would have been more vigorous, precise and destructive to their credibility, (Id.) Ms. Sandoval also indicates that, at that time, June 2010, both she and petitioner had knowledge of motions being presented by counsel of other defendants (particularly by attorneys Castro-Lang and Luis Rivera)[3] regarding the alleged late delivery of the impeachment

---

[3] Mr. Castro-Lang himself is Zavala-Martí's retained counsel in these proceedings, and he was the former trial and appellate counsel for defendant Carlos Omar Bermúdez-Torres whose conviction was overturned by the First Circuit Court of Appeals in 2015, (Criminal Case No. 07-318.)

material.  Although Ms. Sandoval ascertains that the pleadings on this matter were filed "selected parties" and she therefore did not have access to them, the record reveals that numerous post trial motions including motions for new trial based on alleged Brady violations, minutes of proceedings, transcripts of hearings and court orders were available for viewing by Ms. Sandoval (Criminal Docket Nos. 2125, 2235, 2354, 2488, 2972, 3058, 3059, 3060, 3070, 3074, 3075, 3076, 3087, 3113, 3127, and 3137.)

By Ms. Sandoval's own admission, she viewed, and so explained to Zavala-Martí, the impeachment information because "[i]t might, at minimum . . ., be sufficient to raise reasonable doubt but again, she stressed there was no guarantee that Mr. Zavala would be acquitted of all charges." (Id. at p. 8.) After much discussion with his counsel, Zavala-Martí decided not to withdraw his plea, and elected not to join the motions presented by the defendants, (Id.)

There is no doubt that petitioner, contrary to his allegations, had full knowledge, (and his counsel had received the disclosure) of the impeachment material, and made a thoughtful, conscious decision not to pursue the matter any further back in June 2010.  The record reflects that it was not until 2015, when

the First Circuit Court of Appeals issued its opinion and order[4] granting a new trial to some of Zavala-Martí's co-defendants (particularly Carlos Omar Bermúdez-Torres) that petitioner alleges that he made the wrong choice, and retains Bermúdez-Torres' trial and appellate attorney, Mr. Castro-Lang, to file his 2255 petition for relief. Zavala-Martí is not entitled to relief just because he regrets his choice.

Zavala-Martí's argument is that the government violated his constitutional rights by not disclosing, prior to his change of plea hearing, the impeachment evidence as to three cooperating witnesses, (Civil Docket No. 1-1 at p. 5-11), which makes his guilty plea involuntary and unknowing. Zavala-Martí alleges that there was a reasonable probability that he would not have pled guilty if he had been provided the impeachment evidence, (Id. at p. 11-15.) He should, therefore, be allowed to withdraw his guilty plea at this time. (Id. at 19.) Zavala-Martí is mistaken. As previously discussed, Zavala-Martí and his trial counsel discussed the impeachment evidence and what his options were *ad nauseum* and petitioner's final voluntary and knowing decision was not to withdraw his plea.

---

[4] United States of America v. Sonia N. Flores-Rivera, *et al.*, 787 F.3d 1 (1st Cir. 2015).

Second, petitioner has no constitutional right to receive impeachment evidence prior to pleading guilty. "Impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary ('knowing, intelligent, and sufficiently aware'). Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be. But the Constitution does not require the prosecutor to share all useful information with the defendant." United States v. Ruiz, 536 U.S. 622 at 629 (2002) citing, Weatherford v. Bursey, 429 U.S. 545, 559 (1977). Petitioner's only allegation as to his plea not being knowing and voluntary is that he did not have prior knowledge of the impeachment evidence to which the Supreme Court has held he was not constitutionally entitled in the first place. His argument falls flat. Simply put "the Brady rule is inapplicable in cases where a defendant pleads guilty." United States v. Bravo, 350 F. Supp.3d 16, 24 (D. Mass. 2018) citing; United States v. Mathur, 624 F.3d 498, 507 (1st Cir. 2010).

There being no constitutional violation or a claim of actual innocence by petitioner Zavala-Martí's first claim for relief is **DENIED**.

**B.    Petitioner Zavala-Martí's second claim:  Appellate counsel provided ineffective assistance on direct appeal for failing to raise that the district court had engaged in impermissible double counting when it imposed a consecutive sentence in counts 7-9 to counts 1-6 when the grouped count computation of all counts made by the probation officer had already included a two level upward adjustment for obstruction of justice.  Appellate counsel failed to raise that the district court committed procedural sentencing error when it failed to compute the applicable guideline to counts 7-9 prior to imposing the maximum statutory sentence in those counts of 10 and 15 years consecutive to the 35 years imposed for counts 1-6 without justifying the variance or departure.**

To establish ineffective assistance of counsel, a defendant must show that:

1.    His or her attorney's performance was deficient, and

2.    The deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).

In order to establish deficiency, a defendant must establish that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." Strickland 466 U.S. at 688.  Pursuant to Strickland, counsel is presumed to have acted within the range of "reasonable professional assistance," and it is defendant who bears the burden of "overcoming the presumption that, under the circumstances, that challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689.  To show prejudice, a defendant must establish that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  This assessment, however, "must be a 'fairly tolerant' one because 'the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or successful defense.'"  Moreno-Espada v. United States, 666 F.3d 60, 64 (1st Cir. 2012) quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994).

A claim of ineffective assistance of counsel "requires a court to first assess whether 'counsel's representation 'fell below an objective standard of reasonableness.'"  Padilla v. Kentucky, 130 S.Ct. 1473, 1482 (2010).  It is pellucidly clear that petitioner was obligated to show both that counsel's performance fell below an objective standard of reasonableness, and that prejudice resulted from it, Strickland, 466 U.S. at 687. See also, López-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990).  He must do this as to each particular instance in which he claims that his counsel's assistance was ineffective. Counsel's performance must be examined "not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented."  United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1992).  The "range of

reasonable professional assistance" is quite wide. <u>See</u>, <u>Strickland</u>, 466 U.S. at 689. As the Supreme Court has stated, "judicial scrutiny of counsel's performance must be highly deferential." <u>See</u> <u>Strickland</u>, 466 U.S. at 689.

Pursuant to <u>Strickland</u>, petitioner must identify acts or omissions by counsel which need to be outside the wide range of professional competent assistance and the harm such actions caused. Furthermore, "a defendant's failure to satisfy one prong of the <u>Strickland</u> analysis obviates the need for a court to consider the remaining prong." <u>Moreno-Espada v. United States</u>, 666 F.3d 60, 64 (1st Cir. 2012) (quoting <u>Tevlin v. Spencer</u>, 621 F.3d 59, 66 (1st Cir. 2010).

Defendants have a right to effective assistance of counsel on appeal. Claims of ineffective assistance of appellate counsel are also measured under the <u>Strickland</u> standard, <u>Evitts v. Lucey</u>, 469 U.S. 287 (1985). Appellate counsel is not required to raise every non-frivolous claim, but rather selects among them to maximize the likelihood of success on the merits, <u>Lattimore v. Dubois</u>, 311 F.3d 46 (1st Cir. 2002).

Where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." <u>Smith v. Robbins</u>, 528 U.S. 259 at p. 288 (2000). To overcome the presumption of

competence of appellate counsel, a petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert.  Zavala-Martí has not made such a showing.

Zavala-Martí argues that appellate counsel was ineffective in failing to raise several double counting arguments as to his sentence, (Civil Docket No. 1-1 at pp. 18-34.) Petitioner alleges that appellate counsel failed to contest the court's grouping and the imposition of a two-level enhancement for obstruction of justice because it caused double counting, (Civil Docket No. 1-1 at pp. 20-21.)  This argument was first raised prior to petitioner's re-sentencing as objections to the Pre-Sentence Investigation Report (PSR).  Both Zavala-Martí and the government expressed their positions on the matter, (Criminal Docket No. 3189 at pp. 5-6.)  Zavala-Martí takes the argument in his 2255 motion a step further, and alleges that the Court and the PSR failed to calculate the guideline ranges for both groups and then determine which had the highest offense level as required by U.S.S.G. § 3D1.1 and 3D1.3 (Civil Docket No. 1-1 at pp. 28-29.)

Zavala-Martí's argument is contradicted by what the record of the sentencing hearing reflects.  The Court properly applied the group with the highest offense level which involved the drug/firearms offenses; Zavala-Martí therefore cannot show any

error by the Court, and much less claim ineffective assistance of
appellate counsel for a non-existent error.[5]

Zavala-Martí raises two final arguments as to the
Court's sentencing calculation. First, petitioner argues that the
Court incurred in double counting when it imposed a consecutive
sentence for the obstruction of justice counts when a prior two-
level obstruction adjustment had already been applied, (Civil
Docket No. 1-1 at 27.) Petitioner is mistaken. The Sentencing
Guidelines clearly allow for cumulative application of adjustments
from different guidelines sections, U.S.S.G. § 1B1.1, comment
(n.4(B)); United States v. Arsenault, 833 F3d. 24, 31 (1st Cir.
2006). "The guidelines do not control whether sentences run
concurrently or consecutively." United States v. Jarvis, 606 F.3d
552, 554 (8th Cir. 2010). Title 18 United States Code, § 3584
recognizes that when multiple terms of imprisonment are imposed,
the district has the discretion to run those terms of imprisonment
concurrently or consecutively.[6] Therefore, because the obstruction

---

[5] On appeal Zavala-Martí challenged his 50-year sentence on three grounds:
(1) the district court violated 18 U.S.C. § 3553(c)(1) by failing sufficiently
to explain in open court its reasons for selecting the sentence; (2) the
sentence is substantively unreasonable because the guidelines calculation
included a four point leadership enhancement that was based upon clearly
erroneous factual findings; and (3) the sentence was substantively unreasonable
due to the disparity between Zavala's sentence and those of similarly situated
defendants. Ultimately, the Court of Appeals affirmed Zavala-Martí's sentence
as imposed by the district court, United States v. Zavala-Martí, 601 Fed. Appx
6 (1st Cir. 2015).
[6] Indeed, a court may impose consecutive sentences for multiple counts even if
the counts are grouped for sentencing guidelines purposes. See, United States

enhancement and Title 18, <u>United States Code</u>, § 3584(a) "bear on conceptually separate notions related to sentencing," <u>United States v. Rojas</u>, 531 F.3d 1203, 1207 (10th Cir. 2008), the district court did not engage in improper double counting, <u>United States v. Redmond</u>, 388 Fed. Appx. 849 (8th Cir. 2010).

Zavala-Martí's final argument is that the Court improperly imposed the sentence for bribery-witness tampering to be served consecutively to the drug-firearms offense.

Section 5G1.2(d) of the Sentencing Guidelines requires that if the maximum sentence allowed under any one count does not reach the total punishment calculated under the guidelines, the district court must impose consecutive sentences on the multiple counts until it reaches a sentence equal to the total punishment calculated under the guidelines, <u>United States v. García-Torres</u>, 341 F.3d 61, 74 (1st Cir. 2003). In petitioner's case, the guideline range was 30 years to life, and the statutory maximum was 80 years. The Court properly could and did stack the bribery-witness tampering sentence on to the drug-firearms offense in order to achieve the total punishment closer to the statutory maximum, which came to a total sentence of imprisonment of 50 years. To reiterate what the First Circuit Court of Appeals determined about

_____

v. Souphanthog, No. 19-10627, 2019 U.S. App. LEXIS, 32557 *7 (11th Cir. Oct. 31, 2019); <u>United States v. Bonilla</u>, 579 F. 3d 1233, 1245 (11th Cir. 2009).

petitioner's re-sentence, so as not to fall on deaf ears, "Clearly, the district court here decided that the available facts, including those already discussed above, outweighed any of the potential factors favoring a lower sentence.   We cannot say that this decision constituted an abuse of discretion so as to remove Zavala's sentence from 'the expansive boundaries of the universe' of reasonable sentences.  Martin, 520 F.3d at 92".  Zavala-Martí, 601 Fed. Appx. at 9 (1st Cir. 2015).

Petitioner cannot claim any allegation of ineffective assistance of appellate counsel if he failed to raise what amounts to erroneous or misplaced arguments.   Zavala-Martí has failed to meet the Strickland standard.   His second claim is **DENIED**.

Before this Court are the complaints of a dissatisfied, perhaps disgruntled defendant.  As of this date, Zavala-Martí is still incarcerated while perhaps some of his co-defendants, whom are no less culpable than he, are either approaching their release dates or have been released.  As Zavala-Martí sees it, this is not fair; yet the reality of petitioner's situation is that he made an informed decision and chose to plead guilty to the entire indictment even when there was a 17 year offer by the government. He did so knowingly and voluntarily.  Even after pleading guilty, he had numerous meetings with his counsel to discuss whether given the revelation of possible impeachment evidence against

cooperating defendants he should perhaps withdraw his guilty plea.
He once again chose not to.  Only after one of his co-defendants
had his conviction overturned and successfully entered into a plea
agreement with the government which provided for a sentence lower
than petitioner's sentence did Zavala-Martí jump.  Then, Zavala-
Martí hired the same attorney that had successfully obtained the
reversal of conviction of his co-defendant to raise the same
arguments by way of a 2255 petition.

        That is not how it works; that is not the purpose of a
2255 petition for relief.  At no time has petitioner made a claim
of actual innocence nor has he hinted at it.  On the contrary, all
Zavala-Martí has stated is that he might have been able to raise
reasonable doubt if he had gone to trial with the impeachment
evidence of which he had been made aware.  His unspoken argument
is that his sentence is greater than those of his co-defendants
who went to trial.  That is a risk Zavala-Martí took, and it does
not amount to a valid claim of ineffective assistance of counsel.
Petitioner gambled and lost.

**IV.   CONCLUSION**

        For the reasons stated, petitioner José Manuel Zavala-Martí's
motion pursuant to 28 U.S.C. § 2255 (Civil Docket No. 1) and its
supporting Memorandum of Law (Civil Docket No. 1-1), as well as

all subsequent filings are **DENIED**.  This case is **DISMISSED with prejudice**.  Judgment shall be entered accordingly.

If petitioner files a notice of appeal, no certificate of appealability shall issue because he has not made a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 25, 2020.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE